# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| TIMOTHY QUINN WILLIAMS, | ) |
| Plaintiff, | ) |
| v. | ) CV616-131 |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

Plaintiff Timothy Williams seeks judicial review of the Social Security Administration's denial of his application for Disability Insurance Benefits (DIB).

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, and has been substituted for Acting Commissioner Carolyn W. Colvin as the defendant. *See* Fed. R. Civ. P. 25.

1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.,* 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[2] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work

---

[2] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

2

experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II. ANALYSIS

Williams, who was 44 years old when his DIB claim was denied, alleges disability beginning March 10, 2011. Tr. 67. He completed high school and has past work experience as a mechanic. Tr. 47-48, 183. After a hearing, the ALJ issued an unfavorable decision. Tr. 12-15, 24-32. He found that Williams' status post-ventral hernia repair constituted a severe impairment but did not meet or medically equal a Listing. Tr. 26. Based on the evidence of record, the ALJ found that he retained the RFC for the full range of sedentary work. Tr. 27.

Plaintiff, he determined, was incapable of performing his past work, but given his age and education was "not disabled" under the Medical-Vocational Guidelines (the "Grids"). Tr. 31; *see* SSR[3] 82-41 &

---

[3] Social Security Rulings (SSR) "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). SSRs are entitled to deference, but are not binding on the courts. *Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

20 C.F.R. 404, Subp. 2, App'x 2. Williams disagrees, arguing that the ALJ failed to properly weigh the medical opinion evidence, erred in evaluating plaintiff's subjective pain testimony, and failed to consider his obesity or its effect on his ability to work. Docs. 10 & 12.

## A. Plaintiff's Credibility

The ALJ discredited plaintiff's subjective testimony as to the debilitating extent of his symptoms because

> [a]lthough [Williams] does have the severe impairment of status post ventral hernia repair, the medical record as a whole does not reveal significant functional limitations that would prevent [him] from performing *all* work. The undersigned has found that treatment records did not reveal evidence that supported [his] alleged limited functional ability. [Williams] testified that he had difficulty performing certain physical activities due to his abdominal pain; however, the undersigned has found that the medical evidence and [his] testimony revealed he was able to perform many activities of daily living without significant restriction. In addition, the undersigned has noted that several examining sources found [he] had minimal to no restrictions due to his impairment. Therefore, the undersigned has found [Williams'] allegations not fully credible.

Tr. 28 (emphasis added). Plaintiff also testified, the ALJ noted, that his abdominal pain was controlled with medication. *Id.*

When a claimant attempts to establish disability through his own testimony of pain and other subjective symptoms, the ALJ applies a three-part "pain standard." *Wilson v. Barnhart*, 284 F.3d 1219, 1225

4

(11th Cir. 2002). It requires: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id.* If the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms, the ALJ then evaluates the extent to which the intensity and persistence of the claimant's pain limits his ability to work. 20 C.F.R. §§ 404.1529(b), 416.929(b). The ALJ may consider the history and testimony, medical signs and laboratory findings, medical opinion evidence, and any other evidence of record describing how the pain affects his daily activities and ability to work. *Id.* §§ 404.1529(c), 416.929(c).

If a plaintiff "testifies as to his subjective complaints of disabling pain and other symptoms . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting [his] allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be

obvious to the reviewing court." *Id.* (internal citation omitted). While an ALJ's credibility determination need not "cite 'particular phrases or formulations,'" it "cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" *Id.* at 1210-11 (quoting *Foote*, 67 F.3d at 1561).

The ALJ pointed to numerous inconsistencies in the record between plaintiff's subjective pain allegations and the record. While he alleges he can no longer work due to his abdominal pain, his treatment record is bereft of medical endorsements of disabling limitations on his ability to perform *any* work. *See* tr. 363-69 (Dr. Kulkarni's consultative examination, noting normal findings across the board and no limitations), 376-77 (Dr. Ritter's 2011 state disability opinion, concluding that plaintiff is "permanently disabled" but noting no specific clinical observations or limitations), 385 (Dr. Ritter's 2014 disability statement that while plaintiff is now "totally disabled" for his state job and could "never" return to that work, he is *not* disabled for "any other work"), 406 (Dr. Ritter's 2014 letter questionnaire, opining that Williams' bathroom needs "profoundly limit[ ] employment" but offering no statement that

they would preclude *all* employment), 382-84 (Dr. Lind's 2011 state disability opinions, concluding that plaintiff is "completely disabled and unable to function as a mechanic" due to a "palpable abdominal wall defect," but noting no specific clinical observations or opining to any limitations regarding *any* other job).

His activities of daily living, while not extensive, also contradicted an inability to work. Tr. 28; *see* tr. 48-53, 242 (admitting he washes dishes, shops for groceries, drives, visits with friends and family, and uses the computer). "[A] claimant's admission that he participates in daily activities for short durations does not necessarily disqualify him from a disability." *Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 807 (11th Cir. 2014) (citing 20 C.F.R. § 404.1529(c)(3)(i)); *see also Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity"). But here plaintiff admitted to activities that contradict his claims of total disability. And recasting his activities, *see* doc. 10 at 19-20 (Williams claims that he only shopped with his wife, occasionally washed dishes, drove very short distances, and used the computer for only an hour at a time), does not make his ability

7

to engage in them any less inconsistent with the severity of symptoms plaintiff testified to suffering. *See* 20 C.F.R. § 404.1529(c)(3)(i).

Finally, Williams alleged disabling pain but testified that his pain was "eased" with medication and that he could work (albeit with accommodations). Tr. 28; *see* tr. 46 (testifying that Tramadol "doesn't make [the pain] go away completely, but it does ease it off some" to a manageable level) & 56-57 (testifying that he could work as a "security guard" if he "had unlimited access to a bathroom" and could lie down as needed to ease his abdominal pain). The ALJ did not err in crediting plaintiff's admission that his pain was treated (if not completely resolved) by medication. *See Damone v. Comm'r*, 654 F. App'x 473, 475 (11th Cir. 2016) (plaintiff's credibility properly discounted where her pain was "generally" controlled by medications)*; see also Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) ("[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling"), *cited in Daniel ex rel. C.P.D. v. Colvin*, 2014 WL 931951, at *6 (N.D. Ala. Mar. 10, 2014). And though his admission that he could work with some accommodations alone cannot discredit Williams, *see Jacinto v. Comm'r*, 2013 WL 4041865 at *6 (E.D. Cal. Aug. 8, 2013)

8

(plaintiff's claim that he generally "is unable to work is not inconsistent with a claim that [he] could work when given special accommodations."), the ALJ did not commit reversible error by acknowledging it as merely one more layer indicating that plaintiff was not as disabled as he alleged. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (an error is "harmless" where correcting it would not change the outcome). The ALJ did not err in discounting Williams' statements regarding the intensity, persistence, and duration of the limitations imposed by his symptoms. *See both* SSR 96-7p *and* SSR 16-3p.

### B. Medical Opinion Evidence

Based on the creditable evidence of record, the ALJ concluded that Williams retained the RFC to perform sedentary work without postural, mental, or environmental limitations. Tr. 27-30. Plaintiff contends that the ALJ improperly rejected treating physicians Drs. Ritter's and Lind's opinions that plaintiff was physically precluded from working because they were "consistent with each other and no treating doctor offered a contrary opinion." Doc. 10 at 15.

The ALJ, however, properly observed that Dr. Ritter's various opinions that plaintiff was disabled were not entirely consistent with the

overall record. Tr. 30. Williams' ventral hernia repair in 2011 was successful and required no further surgical interventions, only follow-up care. *Id.* And Dr. Ritter's opinions were internally inconsistent regarding whether plaintiff was unable perform *any* work or was so limited in his ability to perform other work that he was indeed "completely disabled." *Compare* tr. 376-77 (Dr. Ritter's 2011 state disability opinion, concluding that plaintiff is "permanently disabled" to a "palpable abdominal wall defect" but noting no specific clinical observations or limitations), *with* 385 (Dr. Ritter's 2014 disability statement that while plaintiff is now "totally disabled" for his state job and could "never" return to that work, he is *not* disabled for "any other work"), *and* 406 (Dr. Ritter's 2014 letter questionnaire, opining that Williams' bathroom needs "profoundly limit[ ] employment" but offering no statement that they would *preclude* all employment). As was Dr. Lind's opinion, which also limited plaintiff's abdominal treatment to "close follow-up" and opined only that plaintiff could not work as a mechanic. Tr. 30; *see* tr. 382-84 (Dr. Lind's 2011 state disability opinions, concluding that plaintiff is "completely disabled and unable to function as a mechanic" due to a "palpable abdominal wall defect," but

10

noting no specific clinical observations or opining to any limitations regarding *any* other job).[4]

It is unclear what value plaintiff thinks these opinions offer: all they do is prove he is absolutely incapable of his past relevant work, just as the ALJ found. Tr. 30-31. What they do not demonstrate, *even if fully credited*,[5] is that he is incapable of any type of sedentary work. Thus, even if the ALJ had erred in rejecting these opinions, the outcome remains the same and that error is harmless.[6] *Diorio*, 721 F.2d at 728.

---

[4] Williams contends that the ALJ had a duty to recontact these physicians to ask for clarification of their opinions. Doc. 12 at 8 (arguing, in fact, that by failing to address this contention the Commissioner concedes the point entirely). But ALJs must only recontact physicians where the evidence is vague, ambiguous, or otherwise insufficient to reach a disability determination. 20 C.F.R. §§ 404.1512(e), 404.1527(c); *Johnson v. Barnhart*, 138 F. App'x 266, 271 (11th Cir. 2005). The record here contained sufficient evidence for the ALJ to make a disability determination without recontacting Drs. Ritter and Lind for additional evidence. Plaintiff points to nothing in the record demonstrating otherwise.

[5] Plaintiff also argues that the ALJ's failure to explicitly describe these physicians' board certifications (as reflected in certain exhibits the ALJ failed to list by name as having been 'considered') constitutes reversible error. Doc. 10 at 14. Too, the ALJ erred by failing to point out a piece of favorable evidence: a treating note (based on plaintiff's own properly discredited subjective report) that "[s]ometimes it will hurt just sitting in the chair and he has to go lie down." *Id.* at 11. But "contrary to [Williams'] contention that the ALJ ignored evidence favorable to [him], 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Mitchell v. Comm'r*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer*, 395 F.3d at 1211). As discussed above, *even if* the ALJ had fully credited these opinions and highlighted these physicians' qualifications, nothing would have changed. So, any failure to do so is harmless.

[6] Plaintiff also insists that the ALJ erred in rejecting these physicians' disability

Plaintiff next contends that the ALJ accorded too much weight to a misinterpretation of consultative examiner Dr. Kulkarni's report. The ALJ cited Dr. Kulkarni's opinion that Williams had no significant work limitations (tr. 30), when in fact (Williams emphasizes) Dr. Kulkarni said no such thing. Doc. 10 at 15 (arguing that "Dr. Kulkarni did not say that full-time work activity, even at the sedentary level, would not cause Williams to suffer a new abdominal tear. . . . Dr. Kulkarni did not address what symptoms or limitations can be expected from Williams's existing bowel resection, abdominal reconstruction, and mesh implant. Dr. Kulkarni just did not say."). But the fact that plaintiff can imagine all sorts of things Dr. Kulkarni *could* have said has nothing to do with the doctor's opinion itself -- had he believed plaintiff was so limited in his ability to function, he would have said so. Instead, Dr. Kulkarni observed "completely normal" physical functioning, a well-healed

---

opinions wholesale on the ground that such an issue is properly "reserved for the Commissioner.'" Doc. 10 at 16 (discussing individual findings, such as "Dr. Ritter's opinion that it is common for surgeries like Williams's to require being in bed a day after working a day."). But that misrepresents the ALJ's credibility determination. The ALJ specifically discounted only Drs. Ritters' and Lind's conclusions regarding *total inability to work* (as to both "disability" and "disability retirement") as being issues reserved to the Commissioner. That is an appropriate application of the standard. *See Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (the regulations provide that "although a claimant's physician may state he is 'disabled' or 'unable to work' the agency will nevertheless determine disability based upon the medical findings and other evidence.").

12

surgical scar that was only minimally tender, no evidence of hernia or recurrence, and subjective complaints of "some discomfort." Tr. 363-69.

And, it bears noting, contrary to plaintiff's contention (doc. 10 at 15), the ALJ didn't say anything about Dr. Kulkarni's opinion conflicting with the other physicians'. Rather, the ALJ emphatically relied on the paucity of any opinion evidence endorsing a single limitation on plaintiff's ability to work (other than his prior work as a mechanic) -- and that finding is undisturbed by plaintiff's argument.[7] The ALJ did not err in his evaluation of the medical evidence.[8]

### C. Plaintiff's Obesity

Williams finally contends the ALJ's failure to explicitly discuss the

---

[7] Plaintiff also asserts that the ALJ committed reversible error by deferring to the nonexamining agency reviewing physician. Doc. 12 at 6-7 (noting the Commissioner conceded it was so). But the Commissioner's statement doesn't quite reflect what the ALJ did: when the treating physicians were discredited, he gave "some weight" -- not deference or controlling weight -- to the agency reviewers. Tr. 29. *And*, the ALJ *rejected* the reviewers' opinion that plaintiff's severe impairment (post ventral hernia repair) was nonsevere. *Id*. It is unclear just what plaintiff hopes to accomplish with this argument.

[8] Plaintiff repeatedly demands perfection in the ALJ's decision, harping on the ALJ's failure to recite certain 'magical language' in his credibility analyses as comprising reversible error. Docs. 10 & 12. But there is no such requirement in the Regulations or the case law. *See, e.g.*, *Wilson*, 284 F.3d at 1225-26; *Caruso v. Comm'r*, 99 F. App'x 376, 379 (3d Cir. 2004) (ALJ's are not required "to use 'magic language' or adhere to a particular analytical format"); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (Social Security "cases do not require such an incantation"); *Daniels v. Comm'r*, 2014 WL 1304940 at *4 (N.D. Ohio Mar. 27, 2014) ("There is no magic language that an ALJ must use").

effect of his obesity (he is 5'7" and has fluctuated between 199-222 pounds) on his ability to work is *per se* reversible error. Doc. 10 at 9-10; *see* tr. 40 (reporting he is 210 pounds and that he "can't lose no weight"); 368 (Dr. Kulkarni's consultative report, noting plaintiff is "moderately obese"); *see also* SSR 02-1p (requiring consideration of obesity throughout the sequential evaluation because "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity."); 20 C.F.R. § 404.1545 ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'").

But plaintiff did not allege obesity as a basis for disability, provide any medical opinion that his weight impacts his ability to work, or testify that his corpulence in any way affects his functioning. Tr. 39-64, 182, 194, 207. And where there is *no* evidence from which the ALJ could have concluded that plaintiff's weight was either a severe impairment or imposed a functional limitation on his ability to perform sedentary work, the ALJ did not need to evaluate it. *See James v. Barnhart*, 177 F. App'x 875, 878 n.2 (11th Cir. 2006) (no duty to evaluate otherwise unmentioned obesity at Step 5); *Garcia v. Comm'r*, 498 F. App'x 710, 712

(9th Cir. 2012) (no duty to evaluate obesity at Steps 4 & 5 where plaintiff "did not provide any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis.").

Nor, for that matter, does plaintiff explain what precisely would have changed in the ALJ's analysis had the ALJ considered that evidence. The only things he points to are equally as attributable to after-effects of his surgery, which the ALJ credited as a severe impairment and accommodated in his RFC assessment. Williams attempts to draw a line from the fact that obesity "may" cause fatigue (SSR 02-1p) to Dr. Ritter's opinion that it is common for someone who has had surgeries like Williams' to "be severely limited the day after substantial abdominal movements" and Williams' own testimony that he is limited by fatigue, such that after even attempting to work for one day he had to "lay down on the couch and rest." Doc. 10 at 9-10. But the Court is unconvinced that this is anything but a *post-hoc* attempt to generate error where the ALJ fully considered plaintiff's pain and fatigue in the context of his post-hernial repair severe impairment and the RFC assessment.

Note, in that regard, that the mere diagnosis of obesity is not

enough to manifest a duty to consider a claim otherwise unaddressed by either the claimant or his physicians. *See Moore*, 405 F.3d at 1213 n. 6 ("the mere existence of these impairments does not reveal the extent to which they limit [plaintiff's] ability to work"); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work")); *Wright v. Commissioner of Social Security*, 327 F. App'x 135, 137 (11th Cir. 2009) (hypotheticals to VEs need not include diagnoses that fail to prognosticate functional limitations). Severe health problems must not simply exist; they must preclude substantial gainful activity. *See* 20 C.F.R. §§ 404.1505(a); 404.1520(a)(4)(iv). The ALJ did not error by failing to evaluate plaintiff's weight *sua sponte*.

## III. CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this  23rd  day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA